IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

YU LIAN TAN, et al.,

    Plaintiffs,

v.

COAST CRANE COMPANY, et al.,

    Defendants.

No. C-10-3570 MMC

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT COAST CRANE COMPANY'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is defendant Coast Crane Company's ("Coast Crane") "Motion for Summary Judgment, or in the Alternative Partial Summary Judgment," filed December 6, 2012. Plaintiffs Yu Lian Tan and Zhi Bin Peng have filed opposition, to which Coast Crane has replied. Plaintiffs, with leave of court, have filed a surreply, to which Coast Crane has responded. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

In their complaint, plaintiffs allege their decedent, Zhu Ming Peng ("Peng"), died as a result of a defective product, specifically, a Lull Model 10K-54 (hereinafter, "Lull") sold by Coast Crane to Peng's employer.[2] The complaint includes four causes of action alleged against Coast Crane, the First through Fourth Causes of Action, which causes of action, respectively, are for "Strict Liability in Tort," "Negligence," "Breach of Express Warranty,"

---

[1] By order filed February 12, 2013, the Court took the matter under submission.

[2] Although plaintiffs refer to the Lull as a "crane" (see, e.g., Compl. ¶ 1), the operating manual refers to the machine as a "forklift" (see Ewen Decl., filed December 6, 2012, Ex. C at 2).

and "Breach of Implied Warranty."[3]  Each of plaintiffs' causes of action against Coast Crane is based on the theory, as alleged in the complaint and further clarified in plaintiffs' surreply, that Coast Crane failed to adequately warn users of the Lull how to "extend and raise the boom simultaneously" and "the dangers of failing to extend the boom while raising it when lifting a suspended load." (See Pls.' Surreply, filed January 22, 2013, at 2:2-4; see also Compl. ¶ 2 (alleging Lull manual "did not properly describe how to extend the boom while raising it").)

By the instant motion, Coast Crane argues it is entitled to summary judgment on the First through Fourth Causes of Action.

At the outset, the Court observes that plaintiffs do not oppose the motion to the extent it seeks summary judgment as to the Third Cause of Action, i.e., their claim for breach of express warranty.  (See Pls.' Opp., filed December 21, 2012, at 4:8-12.) Accordingly, the motion will be granted to the extent it seeks judgment as to the Third Cause of Action.  The Court next turns to the remaining three causes of action.

"A moving party without the ultimate burden of persuasion at trial . . . has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment."  Nissan Fire & Marine Ins. Co., 210 F.3d 1099, 1102 (9th Cir. 2000).  Such moving party "may carry its initial burden of production by either of two methods."  See id. at 1106.  First, "[t]he moving party may produce evidence negating an essential element of the nonmoving party's case."  See id.  Second, "after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial."  See id. As discussed below, the Court finds Coast Crane has failed to meet its burden under either of the above-described methods.

With respect to the first of the above-described methods, Coast Crane offers evidence as to the circumstances pertaining at the time of the accident.  In particular,

---

[3]The complaint also includes a Fifth and Sixth Cause of Action, both of which are alleged only against defendants previously dismissed by plaintiffs.

Coast Crane offers the deposition testimony of the Lull operator, Xi Shan Zhu ("Zhu"), who testified that: (1) he used the Lull to stack metal trusses on a flatbed, (2) Peng suggested the top truss be moved, (3) Peng, while standing inside the middle of the stack of trusses, gave Zhu a hand signal to lift the top truss and attached the top truss to a chain connected to the Lull, (4) Zhu told Peng to "get out," to which Peng responded "it's okay," (5) Zhu began to slowly lift the top truss, (6) the top truss began to slide after it had been raised six inches, and (7) Peng either fell or jumped off the flatbed. (See Cody Decl., filed December 6, 2012, Ex. E at 76-78, 85-87, 90-91, 94, 120-21.)[4] Based on the above-referenced facts, which are undisputed, Coast Crane argues the causes of Peng's injuries are Peng's failure to properly fasten the top truss to the chain, Peng's standing in the middle of the trusses while the top truss was being lifted, and Zhu's attempt to lift the truss with knowledge that Peng was standing in the middle of the trusses.

Although the conduct of Peng and/or Zhu as identified by Coast Crane may well have contributed to Peng's injuries, such arguably contributory negligence by Peng and concurrent negligence by Zhu are not mutually exclusive with a finding of liability on the part of Coast Crane, and there currently is no evidence before the Court that would, as a matter of law, exclude Coast Crane's alleged failure to warn as a legal cause of Peng's fatal injuries.[5] See Mitchell v. Gonzalez, 54 Cal. 3d 1041, 1044, 1052-57 (1991) (adopting

---

[4] Coast Crane also offers the deposition testimony of Winifred Taylor ("Taylor"), who, in her capacity as a safety consultant for Peng's employer, conducted an investigation into the accident. In her testimony, she states the circumstances of the accident as they were related to her by Zhu. (See Cody Decl. Ex. B at 24-25.) Taylor's description of Zhu's statements is consistent with Zhu's own deposition testimony.

[5] In a report prepared for the instant litigation, Fred P. Smith ("Smith"), an expert retained by former defendant JLG Industries, Inc., opines that the "[w]arnings regarding the proper use of the Lull" were "satisfactory" and that the Lull operator's failure to extend the boom as the chain was being lifted did not cause the accident. (See JLG's Evidence, filed January 10, 2013, Ex. I at 32-33.) Coast Crane, however, does not rely on Smith's report and, in any event, in the form submitted by JLG, the report is inadmissible. See Harris v. Extendicare Homes, Inc., 829 F. Supp. 2d 1023, 1027 (W.D. Wash. 2011) (stating "courts in this circuit have routinely held that unsworn expert reports are inadmissible"; collecting cases). Accordingly, the Court has not determined the report's effect on the instant ruling had such evidence been relied upon by Coast Crane and the opinions therein submitted in an admissible form.

1  "substantial factor" test for causation; holding "[a] legal cause of [injury] . . . is a cause
2  which is a substantial factor in bringing about the [injury]") (internal quotation and citation
3  omitted); Espinosa v. Little Company of Mary Hospital, 31 Cal. App. 4th 1304, 1316, 1321
4  (1995) (holding, where injury caused by "three separate, apparently interacting, causes,"
5  plaintiff need only establish defendant's conduct was "a substantial factor in causing the
6  claimed injury"; noting "[t]here may be more than one cause of an injury") (internal
7  quotation and citation omitted).[6]

8  Coast Crane next argues plaintiffs have no evidence to support a finding that the
9  absence of an adequate warning was a substantial factor in bringing about Peng's injuries.
10  As Coast Crane points out, plaintiffs have not disclosed an expert to so opine, and the
11  deadline to disclose experts has passed.  Coast Crane, however, has not cited to any
12  authority suggesting that such question of causation is, in this instance, a matter
13  exclusively within the purview of experts.  See Fed. R. Civ. P. 701 (setting forth
14  circumstances under which lay witness may offer opinion); see, e.g., Rodriguez v. General
15  Dynamics Armament, 2011 WL 2116422, at *5, *8 (D. Haw. 2011) (permitting investigator
16  to offer lay opinion as to cause of explosion, where opinion was based on investigator's
17  "own perceptions and observations, along with knowledge he obtained directly from his
18  prior work experience"); cf. Stephen v. Ford Motor Co., 134 Cal. App. 4th 1363, 1373
19  (2006) (holding where "complexity of the causation issue is beyond common experience,
20  expert testimony is required to establish causation"; finding plaintiff alleging defective tire
21  caused accident required to offer expert testimony to establish causation where theory was
22  "based on the tire's chemical characteristics and the supposedly defective 'recipe' used by

---

[6]Coast Crane also offers evidence as to Zhu's background and training, and, in reliance thereon, asserts Zhu is a "sophisticated user" of the Lull to whom no duty to further warn about the Lull's ability to simultaneously lift and extend was owed.  See Johnson v. American Standard, Inc., 43 Cal. 4th 56, 61 (2008) (adopting "sophisticated user" doctrine and defense).  The doctrine, however, applies to a "plaintiff" who "has (or should have) advance knowledge of the product's inherent hazards," see id., and, for purposes of said doctrine, Zhu's knowledge is not imputed to Peng, see Stewart v. Union Carbide Corp., 190 Cal. App. 4th 23, 28-29 (2011) (holding "Johnson did not impute an intermediary's knowledge to the plaintiff").

4

[tire manufacturer] in the manufacturing process").[7]

Accordingly, to the extent the motion seeks summary judgment as to the First, Second, and Fourth Causes of Action, the motion will be denied.

## CONCLUSION

For the reasons stated above, Coast Crane's motion for summary judgment is hereby GRANTED in part and DENIED in part, as follows:

1. To the extent the motion seeks summary judgment as to the Third Cause of Action, the motion is hereby GRANTED, and Coast Crane shall have judgment in its favor as to the Third Cause of Action.

2. In all other respects, the motion is hereby DENIED.

**IT IS SO ORDERED.**

Dated: February 27, 2013

MAXINE M. CHESNEY
United States District Judge

---

[7] Although not offered or otherwise referenced by Coast Crane, it appears to be the lay opinion of Zhu, the operator of the Lull, that the truss would have slipped even if he had lifted the boom while the chain was extended, which opinion, as noted above, is shared by JLG's expert. (See JLG's Evidence, filed January 10, 2013, Ex. I at 8, 32.) Neither such opinion, however, would preclude plaintiffs from offering evidence to the contrary at trial, absent some bar, unidentified at present, to the introduction of any such contrary evidence.

5